**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3080-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ANEURY TORRES,

     Defendant-Appellant.

_____

Submitted October 7, 2020 – Decided July 21, 2021

Before Judges Ostrer and Accurso.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 14-03-0217.

Joseph E. Krakora, Public Defender, attorney for appellant (Monique Moyse, Designated Counsel, on the brief).

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Mark Niedziela, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Aneury Torres, who was charged with first-degree carjacking and related crimes, pleaded guilty to an amended charge of second-degree robbery. He was treated as a third-degree offender for sentencing purposes and received a three-year sentence subject to the No Early Release Act, N.J.S.A. 2C:43-7.2. Before he entered his guilty plea, both his defense counsel and the trial judge warned him that his plea would almost certainly lead to his removal from the United States.

After Torres was released from State custody and taken into federal immigration custody, Torres filed a petition for post-conviction relief (PCR). He alleged that his defense counsel improperly elicited a factual basis for his plea despite his insistence that he was innocent, and also failed to discuss deportation as a consequence of his guilty plea.

The court denied Torres's PCR without an evidentiary hearing. It also preemptively denied Torres the opportunity to withdraw his plea under State v. Slater, 198 N.J. 145 (2009) (establishing a four-prong test for assessing motions to withdraw a guilty plea), although Torres did not ask to do so.

In his appeal, Torres renews those PCR arguments. He also contends that the court erred in applying Slater to a withdrawal motion he had not filed. We

2

affirm the trial court's denial of PCR, but we vacate its denial of a plea-withdrawal motion.

I.

According to a report of Torres's interview with police, Georgie, one of Torres's acquaintances, told Torres and two other men to join him in going to Paterson to "rob a vehicle." Torres went along, and the four took a public bus to Paterson. After they arrived, Georgie chose the target car; Torres held back, but the others ventured toward it. Georgie and one other spoke to the driver in English, but Torres, who did not speak English, did not understand what was said.

While Georgie and his companion spoke to the driver, Georgie pulled a gun on her. She and her passenger abandoned the car. Then the four men rode off in the stolen car with Georgie at the wheel. However, as they headed back toward the Bronx, police followed. Torres told Georgie to stop, but Georgie refused. The car soon jumped a curb. With their ride abruptly ended, Georgie and the other two fled on foot, while Torres lay down on the ground and was arrested.

A grand jury indicted Torres and charged him with first-degree carjacking, N.J.S.A. 2C:15-2(a)(2); second-degree eluding, N.J.S.A. 2C:29-2(b); second-

3

A-3080-18

degree conspiracy to commit carjacking, N.J.S.A. 2C:5-2 and 2C:15-2(a)(1); third-degree theft by receiving stolen property, N.J.S.A. 2C:20-7(a); third-degree unlawful taking of means of conveyance, N.J.S.A. 2C:20-10(c); third-degree resisting arrest, N.J.S.A. 2C:29-2(a)(3); and fourth-degree aggravated assault of a police officer, N.J.S.A. 2C:12-1(b)(5)(a).

Before Torres entered his plea (pursuant to the agreement we have already described), his trial counsel described on the record her efforts to advise Torres about the immigration consequences of conviction. She stated that she referred Torres to an immigration-law specialist, but Torres declined to retain the specialist after talking to him "informally." Trial counsel also stated that because Torres decided not to retain the specialist, she and Torres circled "no" to question 17(d) on the plea form, which asked if he had "discussed with an attorney the potential immigration consequences of [his] plea." But, on the same form, he answered "yes" to question 17(a), which inquired if he knew that his plea could result in his removal, and "yes" to question 17(f), which inquired if he wanted to proceed with his plea "[h]aving been advised of the possible immigration consequences" of his plea. And he understood the plea form; trial counsel explained at the hearing that she reviewed the bilingual plea form with

4

Torres with the help of Torres's bilingual girlfriend, who testified that she translated all the form's questions.

Torres's trial counsel also stated that she separately discussed Torres's case with the immigration-law specialist. She explained, and Torres confirmed on the record, that both she and the specialist had informed Torres "that this plea . . . may lead to a deportation almost as a certainty."

The trial judge reinforced that message, warning Torres that "it would seem that with this kind of a charge it's a virtual certainty that you're going to be subject to deportation." He also asked, "[S]o, notwithstanding the fact that you didn't directly consult with [the immigration specialist], you still wish to proceed with this plea knowing what the consequences are, . . . namely deportation?" Torres agreed.

With this foundation in place, defense counsel elicited the plea's factual basis. Torres agreed that on July 11, 2013, he was in Paterson and, "along with other individuals, stole a motor vehicle"; that "[t]he owner of the vehicle was present when [he] and the other individuals took her car"; and that he and the others "were able to take this car after threatening bodily injury to the owner." Although he seemed confused and said "[n]o [sic] that intention" when the prosecutor asked if he "and [his] friends . . . approached that car with the intent

5

of taking it from the owner," defense counsel proceeded to clear up the confusion. Specifically, she elicited Torres's agreement that the perpetrators "took the [car] without permission," that he "knew that [he] w[as] committing a crime when [he] stole that vehicle," and that "even though it wasn't maybe [his] idea to steal the car, [he] participated in the crime and [is] responsible nevertheless."

The trial court accepted Torres's guilty plea and found that Torres "underst[ood] fully the ramifications of [his] plea, including, but not limited to, the deportation consequence." The judge later sentenced him in accord with the plea agreement.

In his pro se petition for PCR, Torres alleged that his trial attorney provided ineffective assistance of counsel because she "failed to inform [him] about the [i]mmigration consequence of [his] guilty plea and deportation [sic] was mandatory for a [n]on-citizen and an aggravated felony." In a counseled amended petition, he added: "With regard to the subject of deportation, my attorney never advised me that I could or would be deported. The subject matter was never discussed. My attorney never asked me about my immigration status. The entire subject of deportation was not addressed notwithstanding that I do not speak [E]nglish."

6

Torres also claimed innocence:

> 2. Most importantly, with respect to the facts which pertain to this criminal matter, I am innocent. At the time of the incident, I was present but did not participate in any criminal conduct. I did not threaten the owner of the vehicle nor possess a weapon nor drive the vehicle. I was however present.

> 3. I continually relayed this information to my trial attorney throughout the course of my representation but the information was ignored. I had a defense to the underlying charges.

In denying Torres's petition, the PCR court found "that defendant was well aware his deportation as a consequence [of the guilty plea] was and is a virtual certainty" and "that trial counsel's performance was not in any way deficient." The court also found that Torres provided an adequate factual basis for his plea. Then, the court sua sponte applied the Slater factors to find that Torres could not withdraw his plea for any reason.

On appeal, Torres raises the following arguments:

POINT I

MR. TORRES IS ENTITLED TO AN EVIDENTIARY HEARING ON HIS CLAIM THAT TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO INFORM HIM ADEQUATELY OF THE DEPORTATION CONSEQUENCES OF HIS PLEA AND ELICITING A FACTUAL BASIS TO ROBBERY WHEN [HER] CLIENT WAS NOT GUILTY OF ROBBERY.

7

POINT II

MR. TORRES IS ENTITLED TO A REMAND REGARDING THE PCR COURT'S FINDING THAT HE CANNOT WITHDRAW HIS PLEA UNDER STATE V. SLATER, 198 N.J. 145 (2009).

II.

A.

We first address Torres's contention that defense counsel was ineffective. We review de novo the PCR court's factual findings and legal conclusions made without an evidentiary hearing, State v. Harris, 181 N.J. 391, 419-21 (2004), and apply the two-prong Strickland test to Torres's claims of ineffective assistance, see Strickland v. Washington, 466 U.S. 668, 687, 694 (1984); State v. Fritz, 105 N.J. 42. 58 (1987) (adopting test). Using that test, we consider (1) whether counsel's performance was constitutionally deficient, and (2) whether defendant suffered resulting prejudice, that is, whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 687, 694.

Regarding the first prong, a defendant seeking "[t]o set aside a guilty plea based on ineffective assistance of counsel . . . must show that . . . counsel's assistance was not 'within the range of competence demanded of attorneys in criminal cases.'" State v. DiFrisco, 137 N.J. 434, 457 (1994) (quoting Tollet v.

8

Henderson, 411 U.S. 258, 266 (1973)).  Where a defendant's immigration status is at stake and the law is "succinct, clear, and explicit," counsel must affirmatively inform the defendant that a conviction will result in removal from the country; when the law is not as clear, counsel must advise the defendant of the "risk of adverse immigration consequences."  Padilla v. Kentucky, 559 U.S. 356, 368-69 (2010); see also State v. Gaitan, 209 N.J. 339, 356 (2012).  However, an attorney need not use specific "magic words" to convey the applicable risk or likelihood of removal.  State v. Blake, 444 N.J. Super. 285, 299-300 (App. Div. 2016).

To establish prejudice under the second prong, a defendant must show "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pled guilty and would have insisted on going to trial," State v. Nuñez-Valdéz, 200 N.J. 129, 139 (2009) (alteration in original) (quoting DiFrisco, 137 N.J. at 457), and "that a decision to reject the plea bargain would have been rational under the circumstances," Padilla, 559 U.S. at 372.

Defendant fails to satisfy either Strickland prong regarding his immigration-consequences claim.  Defendant's plea form and his colloquy with his attorney and the judge demonstrate that the judge and two attorneys informed him of his near certain deportation.  His allegations to the PCR court that his

"attorney failed to inform [him] . . . deportation was mandatory" and "never advised [him] that [he] could or would be deported" are "bare assertion[s] . . . insufficient to support a prima facie case of ineffectiveness." See State v. Cummings, 321 N.J. Super. 154, 171 (App. Div. 1999). Torres's defense counsel did not need to say the words "mandatory deportation" to convey the real consequences of his plea. See Blake, 444 N.J. Super. at 299-300. It sufficed that she said his conviction "may lead to a deportation almost as a certainty" and that the judge not only said, "it's a virtual certainty that you're going to be subject to deportation," but also elicited Torres's consent to proceed "knowing what the consequences are . . . namely deportation."

Torres also argues that "the issue is what counsel said, not what the trial court said." That was true in Blake, where we held that a judge's statements, which may have downplayed the deportation risk, could not be imputed to counsel, who had adequately conveyed the immigration consequences of the defendant's plea. Id. at 297. But the judge in Torres's plea hearing did not downplay the deportation risk — rather, he correctly described the immigration consequences of Torres's plea. If nothing else, his doing so doomed any chance that Torres could satisfy the second Strickland prong. Even assuming for argument's sake that trial counsel was deficient (and she was not), the judge's

10

warnings and Torres's responses demonstrated that Torres was fully informed of the immigration consequences, and, therefore, suffered no prejudice.

We turn next to Torres's claim that his attorney was ineffective by eliciting, despite Torres's protestations of innocence, a factual basis for his guilty plea to second-degree robbery. Notably, Torres does not argue that the factual basis was inadequate. So, we do not consider that question. Rather, we consider — and reject — Torres's contention that counsel should not have elicited Torres's confession after he had previously told counsel he was innocent.

We reject Torres's argument for three reasons. First, Torres's claim of innocence falls short. In his PCR petition, he alleged that he "did not participate in any criminal conduct." He supported this assertion by alleging he "did not threaten the owner of the vehicle nor possess a weapon nor drive the vehicle" as if those are essential elements of the crimes; they are not. And Torres never denied his custodial statements that he joined three others on a mission to steal a car, thus conspiring to commit a carjacking. See N.J.S.A. 2C:5-2(a). He asserts no defense of duress. See N.J.S.A. 2C:2-9. And, while two of the men confronted the victims, defendant stood by — powerful circumstantial evidence that he shared their intent. See N.J.S.A. 2C:2-6. Finally, after the carjacking,

11

defendant hopped in the stolen car, thereby receiving stolen property and unlawfully taking a vehicle. N.J.S.A. 2C:20-7(a); N.J.S.A. 2C:20-10(c).

Second, defendant's claim implies that he wished to assert his alleged innocence at a trial, but this desire is belied by his agreement at the plea hearing that he understood he had a right to a trial and that he was waiving that right so he could plead guilty.

Third, given the substantial evidence against him on first- and second-degree charges, Torres has not explained how it would have been rational to reject a plea bargain leading to a three-year sentence.

In sum, the trial court correctly denied Torres's petition for PCR based on ineffective assistance of counsel.

B.

But the trial court did err when it applied the <u>Slater</u> test in the absence of a <u>Slater</u> motion. A motion to withdraw a plea before sentencing, <u>see</u> <u>Rule</u> 3:9-3(e), or after sentencing, <u>see</u> <u>Rule</u> 3:21-1, is distinct from a petition for post-conviction relief based on ineffective of assistance of counsel, which is filed under <u>Rule</u> 3:22. <u>See</u> <u>State v. O'Donnell</u>, 435 N.J. Super. 351, 368 (App. Div. 2014). These "requests for relief" are "governed by different rules of court" and "must be considered separately." <u>Ibid.</u> The trial court should have considered

12

only Torres's petition for PCR, because that was the only relief he sought.  It is a "fundamental tenet of our Anglo-American system of justice that no court or administrative agency is so knowledgeable that they can make fair findings of fact without providing both sides the opportunity to be heard."  McGory v. SLS Landscaping, 463 N.J. Super. 437, 454 (App. Div. 2020) (quoting Paco v. Am. Leather Mfg. Co., 213 N.J. Super. 90, 97 (App. Div. 1986)).  Any decision on whether Torres would be entitled to withdraw must await his motion (and any support he would marshal in support of it) and the State's response.

We recognize that the PCR court's written order states only "that defendant's application for post conviction relief is **denied**"; it does not expressly address a motion to withdraw.  But when a judge's written or oral opinion conflicts with a written order, the opinion controls.  Cf. Taylor v. Int'l Maytex Tank Terminal Corp., 355 N.J. Super. 482, 498 (App. Div. 2002) (stating that "[w]here there is a conflict between a judge's written or oral opinion and a subsequent written order, the former controls").  Therefore, we vacate that part of the court's decision denying a plea-withdrawal motion that defendant never made.

Affirmed in part, vacated in part.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3080-18