**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2063-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

GREGORY TORRES,

    Defendant-Appellant.

_____

Submitted September 24, 2025 – Decided October 15, 2025

Before Judges Smith and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 15-06-0468.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Steven M. Gilson, Designated Counsel, on the brief).

James O. Tansey, First Assistant Prosecutor of Union County, Designated Prosecutor for purpose of this appeal, attorney for respondent (Michele C. Buckley, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Gregory Torres appeals from a November 17, 2023 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. Defendant was convicted of first-degree murder and related weapons charges. He was tried with two co-defendants, Firicin Augustin and Jamar Mosby. In his PCR petition, he alleges trial counsel was ineffective for failing to consult with him or request a self-defense charge, and claims counsel misadvised him regarding his right to testify and pressured him not to testify. After de novo review of all applicable legal principles, we affirm.

I.

We derive the following facts from the record and our October 26, 2021 unpublished opinion affirming the conviction. See State v. Torres, No. A-2506-18 (App. Div. Oct. 26, 2021) (slip op. at 3-20). The crimes with which defendants were charged took place on December 12, 2014, at an Elizabeth apartment building known as Pierce Manor—a place, according to the testimony of several witnesses, where residents and others "hung out" in the building's hallways and lobby, often smoking and "doing drugs." Some witnesses also said that dealers, including Bilal Fullman, the victim, regularly sold drugs at Pierce Manor.

A-2063-23

Tyrone Dozier, a Pierce Manor regular, testified Fullman was "like family" to him. Even though they were competitors, Dozier explained people at Pierce Manor "[stuck] together" and did not report each other's illegal dealings to police. Dozier said "strangers" didn't usually hang around the building and would not have been welcome because they were not "from there."

Zumirah Brockington was the mother of Fullman's child. She and her child lived in Cherry Hill but regularly traveled to Elizabeth to visit Fullman. On December 12, 2014, when Fullman picked up Brockington at the train station around noon, he told her he was not feeling well. After going to the doctor, Fullman, Brockington, and the child took a cab to Pierce Manor. Once there, at approximately 5:30 to 6:00 p.m., they visited Fullman's grandmother, who lived in the building, and later went to the apartment of Stephanie Dozier, a friend of Fullman's. Stephanie Dozier[1] testified they arrived around 6:30 p.m.

About forty-five minutes later, Stephanie and Fullman left the apartment to take Stephanie's cat outside; Stephanie returned upstairs while Fullman remained outside. Stephanie testified she did not see anyone else in front of the

---

[1] We refer to all witnesses by their last names with the exception of Stephanie Dozier, who we refer to as Stephanie to avoid confusion with Tyrone Dozier. We intend no disrespect.

A-2063-23

building when she and Fullman parted. She also saw between ten and twenty people she did not recognize in the downstairs hallway.

Around that same time, Raheem Wilkins, a Pierce Manor resident, spoke with Fullman outside the building as Wilkins left with his girlfriend, Belinda Best. Wilkins testified that on his way out, he saw and greeted several people in the downstairs hallway of Pierce Manor, including Mosby, Augustin, Jumani Terrell, and Dozier. Best testified she talked to Fullman and saw Mosby, Mosby's brother Sutton West, Dozier, and others. Another Pierce Manor resident, Shamal Lee, passed through the lobby of the building on his way upstairs and saw several people there including Fullman, Augustin, West, Terrell, Michael Thompkins, and possibly Dozier.

Later, Fullman went upstairs and briefly talked to Brockington; he declined to go with her to a Chinese restaurant and went outside again. Brockington returned twenty minutes later and saw Fullman standing outside Pierce Manor. Brockington testified Augustin was standing about ten feet away from Fullman, and the two were arguing as she approached. She heard Augustin tell Fullman to "look at his gun" as he lifted his shirt; Brockington saw the handle of a "black and silver" gun sticking out of Augustin's waistband. According to Brockington, Fullman said, "I don't care, I don't want to see [that]

4

little shit anyway," and asked Augustin what kind of gun it was. Augustin replied that it was "a .40," and said, "but it kick up, though." Brockington explained she thought Augustin meant the gun "work[ed]."

Fullman and Brockington walked into the vestibule. Augustin followed and continued to argue with Fullman. Brockington testified she saw Torres and Mosby in the hallway, along with several others. She said Fullman took off his jacket and asked her to "hold his stuff" because Augustin "[kept] fucking with [him]" and he "want[ed] to fight." Augustin backed away, saying, "I'm not going to fight you" and then asked Brockington, who was still holding her purchase from the Chinese restaurant, for "a piece of [her] chicken." When Brockington acceded, Fullman "got mad" and told her to go back upstairs. Fullman and Augustin were still arguing when Brockington got to the elevator. Brockington waited upstairs but called Fullman at 8:17 p.m. to tell him she wanted to leave Pierce Manor. Fullman said he was "still waiting on a person to bring him the money" and once that happened, they could leave.

Dozier testified that at around 8:00 p.m. on December 12, 2014, he was in the lobby of Pierce Manor "counting [his] drugs." He saw Fullman standing by the front door looking outside, and he saw Torres, Augustin, Mosby, and a few others "hanging out" in the vestibule and lobby area. Dozier said he was

standing across the lobby from Fullman and defendants, a little way down the first-floor hallway, but he could see into the lobby when he looked up from his counting.

Dozier said defendants were wearing black clothing and ski masks, but the masks weren't covering their faces. He knew them from "around the neighborhood" and did not think their presence at Pierce Manor was odd "because they [were] from there," meaning they often hung around at the building. Dozier said while he was initially watching, he did not see defendants acting "strange," and did not see them talk or argue with Fullman.

Dozier testified he suddenly heard "shots go off" and looked up to see "which direction [they were] coming from." He said, "[t]hat's when I saw them, the three people with the guns." When asked to clarify, he said he saw all three defendants holding guns, and Fullman "on the ground." He said he could clearly see defendants' faces. According to Dozier, everyone else in the lobby ran away, and he "heard more shots" as he "took off."

Dozier went outside through a nearby "side door," ran in a circle around two other apartment buildings in the complex and then stopped to look "down" at Pierce Manor. He noticed the door he had exited through was "still open," and he "went down there to see like what was up." He found Fullman on the

6

floor in the vestibule between the two sets of entry doors to the building. Two men, Thompkins and Terrell, were "checking [Fullman's] pockets." Dozier saw the two take a gun and drugs out of Fullman's pocket and run away. After that, Dozier "closed [Fullman's] eyes" and waited by the body until police arrived a few minutes later.

Brockington testified Thompkins knocked on the door of Stephanie Dozier's apartment "ten minutes" after her 8:17 p.m. phone call with Fullman. Stephanie went to the living room, where she saw Brockington, the children, Thompkins, and Thompkins's mother, Crystal Harvey. When Thompkins said Fullman "got shot," Stephanie, Brockington, and Harvey went downstairs, where they saw Fullman's body in a pool of blood in the vestibule. Brockington and Stephanie testified they saw no other "civilians" in the hallway area. Police ordered the women to stay back to avoid touching evidence. Brockington and Stephanie returned to the latter's apartment.

Twenty or thirty minutes later, officers came upstairs and asked Brockington to bring her child and come with them. An officer took Brockington and her son to Fullman's grandmother's apartment, where they stayed until her mother arrived to get the child and a detective came to take her to the Union County Prosecutor's Office to give a statement. Stephanie said "a

7

little while later," someone came to her door and took her to the Prosecutor's Office, where she also gave a statement.

On June 26, 2015, a Union County grand jury indicted defendant and two co-defendants, Firicin Augustin and Jamar Mosby on three counts: first-degree murder, N.J.S.A. 2C:11-3(a)(1) and (2) (count one); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (count two); and second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count three). At trial, a jury found defendant guilty of all three counts. Augustin was acquitted of counts one and three but was convicted of count two. Mosby was acquitted on all counts.

Defendant was sentenced to fifty years in prison with forty years of parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, to be served consecutively with a sentence from an earlier, unrelated conviction. We affirmed on direct appeal, but remanded for resentencing pursuant to State v. Yarbough, 100 N.J. 627, 643-44 (1985). Torres, slip op. at 68. Defendant petitioned for certification, which the Supreme Court denied. State v. Torres, 249 N.J. 445 (2022).

On March 16, 2022, defendant filed a pro se verified petition for post-conviction relief. After being assigned representation, defense counsel filed an

amended verified petition and supplemental certification.  The PCR court denied relief without an evidentiary hearing.  This appeal ensued.

Defendant raises the following points on appeal:

> THIS MATTER MUST BE REMANDED FOR AN EVIDENTIARY HEARING BECAUSE DEFENDANT ESTABLISHED A PRIMA FACIE CASE OF TRIAL COUNSEL'S INEFFECTIVENESS.
>
> A. Trial Counsel Failed to Raise the Issue of Self-Defense.
>
> B. Trial Counsel Abridged Defendant's Constitutional Right to Testify.

We reject these contentions and affirm.

## II.

We review the denial of defendant's PCR petition de novo because there was no evidentiary hearing.  State v. O'Donnell, 435 N.J. Super. 351, 373 (App. Div. 2014).  However, a PCR court's decision to proceed without an evidentiary hearing is reviewed for an abuse of discretion.  State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013).

To establish a claim of ineffective assistance of counsel, a defendant must satisfy the two-prong Strickland test:  (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) "the deficient performance prejudiced the defense."

9

Strickland v. Washington, 466 U.S. 668, 687 (1984); State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-prong test in New Jersey as the State constitutional standard). With respect to prong one, a defendant must establish that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Pursuant to prong two, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Additionally, a defendant may argue an evidentiary hearing is warranted to develop the factual record in connection with an ineffective-assistance claim. State v. Preciose, 129 N.J. 451, 462-63 (1992). However, the PCR court should grant an evidentiary hearing only where: (1) a defendant is able to prove a prima facie case of ineffective assistance of counsel; (2) there are material issues of disputed fact that must be resolved with evidence outside of the record; and (3) the hearing is necessary to resolve the claims for relief. See R. 3:22-10(b); State v. Porter, 216 N.J. 343, 354 (2013).

### A. Self-Defense

Defendant claims his counsel was ineffective in failing to consult with him regarding a potential self-defense argument and in failing to raise the issue

of self-defense at trial. Defendant claims "[t]he record is replete with testimony that Bilal Fullman not only possessed and used a gun that evening, but that he may have fired the first shot." Specifically, he points to the testimony of Dozier, the State's principal witness, who confirmed Fullman "had a number of different guns"; "usually carried" a ".45."; and showed a gun to Dozier on the day Fullman was shot. Further, Dozier testified he saw two men, Michael Thompkins and Jumani Terrell, take a gun out of Fullman's pocket after he was shot.

There was no evidence in the trial record or in defendant's PCR petition supporting a claim of self-defense, and trial counsel was not ineffective for not pursuing the self-defense theory. Defendant's certification contains no allegation or explanation that Fullman threatened him with the gun or that defendant shot Fullman in self-defense. In fact, Dozier's testimony was that Fullman's gun was in his pocket and only taken out of his pocket after he had been shot. Defendant fails to meet either prong of Strickland.

The PCR court properly concluded defendant failed to demonstrate a prima facie case of ineffective assistance of counsel for failing to request a self-defense argument as the evidence presented did not show defendant would have been justified in claiming self-defense. Moreover, trial counsel's strategy was to challenge the State's witnesses by pointing out their inconsistent statements

11

and bias.  With this strategy, trial counsel sought to convince the jury defendant was not involved in the crime.  Requesting a self-defense charge would have contradicted this theory of the case.  Counsel's decision to forgo the charge was a reasonable strategic decision and was not ineffective.  See State v. Arthur, 184 N.J. 307, 322-23 (2005).

### B.  Defendant's Failure to Testify

Defendant additionally argues trial counsel was ineffective by failing to advise defendant of his right to testify and pressuring him not to testify.  A review of the record reflects the trial court had substantial colloquy with defendant regarding his right to testify and he knowingly waived his right. Effective assistance of counsel requires trial counsel to "inform defendant properly that the decision whether to testify [is] his" and "sufficiently consult" with defendant about the decision to testify.  State v. Bey, 161 N.J. 233, 271 (1999); State v. Savage, 120 N.J. 594, 631 (1990) ("Counsel's responsibility includes advising a defendant of the benefits inherent in exercising that right and the consequences inherent in waiving it. . . . Indeed, counsel's failure to do so will give rise to a claim of ineffectiveness of counsel.").

Even if we accept defendant's allegations of counsel's pressure for the purposes of this appeal, he did not establish prejudice pursuant to Strickland as

12

he failed to offer any proposed testimony he would have given at trial that would have affected his convictions. Instead, he offers only bald, unsubstantiated assertions that the outcome would have been different. See Porter, 216 N.J. at 355 (holding a defendant is not entitled to an evidentiary hearing where allegations of ineffective assistance of counsel are "too vague, conclusory, or speculative" and not supported by "specific facts and evidence." (quoting State v. Marshall, 148 N.J. 89, 158 (1997))). Under the second Strickland prong, a defendant must "affirmatively prove" "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." State v. Gideon, 244 N.J. 538, 551 (2021) (quoting Strickland, 466 U.S. at 693-94). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Ibid. (quoting Strickland, 466 U.S. at 694). Proof of prejudice under Strickland's second prong "is an exacting standard." Ibid. (quoting State v. Allegro, 193 N.J. 352, 367 (2008)). We agree with the PCR court the record demonstrates defendant was given the opportunity to provide specifics about what his testimony would have included but did not do so. Defendant has not demonstrated a prima facie case of ineffective assistance of counsel pursuant to Strickland.

A-2063-23

Moreover, because defendant did not demonstrate a prima facie claim of ineffective assistance of counsel, the PCR court properly denied defendant an evidentiary hearing. The court's findings are sound, and its legal conclusions are correct.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

14

A-2063-23