974 A.2d 420 (2009)
408 N.J. Super. 177
STATE of New Jersey, Plaintiff-Respondent,
v.
Alice O'DONNELL, Defendant-Appellant.
No. A-0858-06T4
Superior Court of New Jersey, Appellate Division.
Argued April 28, 2009.
Decided July 2, 2009.
*421 Stephen P. Hunter, Assistant Deputy Public Defender, argued the cause for appellant (Yvonne Smith Segars, Public Defender, attorney; Mr. Hunter, of counsel and on the brief).
Joie Piderit, Assistant Prosecutor, argued the cause for respondent (Bruce J. Kaplan, Middlesex County Prosecutor, attorney; Ms. Piderit, on the brief).
Before Judges SKILLMAN, GRAVES and GRALL.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
The issue presented by this appeal is whether evidence observed in plain view during a police entry into a residence to provide emergency aid may be seized without a warrant even though there is a short delay between the emergency aid entry and the seizure of evidence by other police officers responsible for processing the crime scene. We conclude that the seizure of evidence without a warrant is permissible under these circumstances because the entry into the residence by police officers responsible for processing crime scene evidence constitutes a reasonable continuation of the initial entry to provide emergency aid.
Around 12:45 p.m. on February 22, 2005, the Highland Park Police Department received a 9-1-1 call from one of defendant's sisters, who reported that there was an unconscious six-year-old child at 345 Crowells Road in Highland Park. A number of Highland Park police officers immediately responded to the scene.
Upon their arrival, the police officers were met at the entrance to defendant's apartment by one of defendant's sisters, who was "screaming and yelling to the effect of he's dead." The officers entered the apartment, where they found defendant's deceased son in a bedroom.
One of the Highland Park police officers, Lieutenant Scott Golden, entered the apartment through the back door, went into the bedroom where he saw the deceased child, then walked into the kitchen and asked one of defendant's sisters where he could find the child's mother. She directed Lieutenant Golden to the living room, where he found defendant sitting on a couch with dried blood on her hands. Lieutenant Golden attempted to question defendant about what had happened to her *422 son. She told him that she had given him Benadryl the night before. However, her other responses were "just incoherent[] rambling."
Sergeant Joseph Vassallo, the supervisor of the Highland Park investigation unit, arrived at the apartment shortly after Lieutenant Golden. When he entered the bedroom, he observed small amounts of blood on the bedding near the deceased's body and a small amount of what appeared to be vomit on a pillow. In addition, Sergeant Vassallo observed handwritten notes to the police and family members and pictures in the kitchen.
Based on the information obtained in their initial investigation, the Highland Park police officers took defendant into custody and transported her, together with her two sisters, to police headquarters. They also called the homicide unit in the Middlesex County Prosecutor's Office and secured defendant's apartment by stationing police officers at the front and back entrances.
Investigators from the Prosecutor's Office arrived thirty to forty minutes later and entered the apartment with Sergeant Vassallo. At this time, the body of the deceased child was still in the apartment. The Prosecutor's Office investigators subsequently seized the bedding from the bed in which the child had been lying and the handwritten notes and other potential evidence Sergeant Vassallo had observed upon his initial entry into the apartment.
Thereafter, the Prosecutor's Office investigators and Sergeant Vassallo went to the Highland Park police headquarters, where they participated in questioning of defendant that resulted in her making inculpatory statements. Based on information obtained from defendant, the Prosecutor's Office investigators and Sergeant Vassallo returned to defendant's apartment the next day, February 23, 2005, and seized additional evidence, specifically medications found at various locations in defendant's bedroom.
Defendant was indicted for murder, in violation of N.J.S.A. 2C:11-3(a). Defendant filed a motion to suppress the evidence seized in her apartment and her inculpatory statements. The trial court conducted an evidentiary hearing, at which testimony was presented by Lieutenant Golden, Sergeant Vassallo, one of the Prosecutor's Office investigators, and defendant.
Based on this evidence, the motion judge concluded that the police entry into defendant's apartment on February 22, 2005 was justified under the emergency aid exception to the warrant requirement and that the seizure of evidence observable at that time was proper under the plain view doctrine[1]:
The Highland Park police officers responded to a 911 call that a six year old boy was unconscious or not breathing. The record reflects that they did not enter the defendant's home with an initial motivation to arrest anyone or seize evidence.... [T]he emergency aid exception would have justified their belief that there was an emergency that there might be someone in the home whose life was in danger, and that they were authorized to enter to provide assistance.
. . . .

*423 Now, once in the apartment, it was immediately apparent to them that the child was not alive. And as they examined the premises, it was also apparent to them that there were items of possible evidentiary value.
. . . .
[W]hen Sergeant Vassallo originally made these observations, he began to secure the scene. And he did wait for the Prosecutor's Office to come in. And then the representatives of the Prosecutor's Office ultimately seized the items.
. . . .
[T]he fact that Sergeant Vassallo had the defendant transported to police headquarters and then he waited for the Prosecutor's Office to arrive before the items that had been observed in plain view subsequent to a lawful entry, the fact that all of this took place without the[m] obtaining a warrant does not make it unreasonable as far as the Court is concerned. The Fourth Amendment was not designed to provide technicalities, but it was designed to protect people from unreasonable searches and seizures. The officers had lawfully entered the premises. They had clearly observed these items in plain view. And in the process of securing the premises and before they ultimately left to go back and interrogate the defendant, they seized these items and took them at that time. And I find all of that to be quite reasonable.
However, the motion judge concluded that the emergency that justified the initial entry into defendant's apartment did not continue when the officers returned the next day and searched the apartment for additional evidence without first obtaining a warrant. Accordingly, the motion judge denied defendant's motion to suppress as to the evidence seized on February 22, 2005, but granted it as to the additional evidence seized on February 23, 2005. The court also denied defendant's motion to suppress her inculpatory statements, which included an admission that she had given her son several Benadryl tablets and two Klonopin tablets and then smothered him with a pillow.
Following the trial court's rulings on her motion to suppress, defendant entered into a plea agreement under which she agreed to plead guilty to the murder charge and the State agreed to recommend a sentence of thirty years imprisonment without eligibility for parole. The trial court accepted the plea and sentenced defendant in accordance with the plea agreement.
Defendant's appeal is directed solely at the denial of her motion to suppress the evidence seized in her apartment on February 22, 2005.
A police officer or other public safety official may enter a home under the emergency aid exception to the warrant requirement if that official has
an objectively reasonable basis to believe that an emergency requires that he provide immediate assistance to protect or preserve life, or prevent serious injury; his primary motivation for entry into the home [is] to render assistance, not to find and seize evidence; and there [is] a reasonable nexus between the emergency and the area or places to be searched. [State v. Frankel, 179 N.J. 586, 600, 847 A.2d 561, cert. denied, 543 U.S. 876, 125 S.Ct. 108, 160 L.Ed.2d 128 (2004).]
If there is a proper entry into a home under the emergency aid exception, "evidence observed in plain view by a public safety official who is lawfully on the premises and is not exceeding the scope of the search will be admissible." Id. at 599-600, 847 A.2d 561.
Defendant does not dispute that the Highland Park police officers lawfully entered *424 her apartment without a warrant under the emergency aid exception in response to her sister's 9-1-1 call reporting that there was an unconscious six-year-old child in the apartment. Defendant also does not dispute that after the Highland Park police officers found the child dead in the apartment, they could have seized any materials observed in plain view that they had probable cause to believe were evidence of the child's apparent murder. However, defendant argues that because the Highland Park police officers did not immediately seize the evidence, but instead secured the apartment until the arrival of members of the Prosecutor's Office homicide unit, the investigators in that unit were required to obtain a warrant before seizing evidence that had been observed in plain view by the Highland Park police officers.
The Supreme Court rejected a similar argument in Michigan v. Tyler, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978), which involved an initial entry into a commercial premises by firefighters to put out a fire and a subsequent investigation, without a warrant, of the causes of the fire, which revealed two plastic containers of flammable liquid. In rejecting defendant's argument that the "the exigency justifying a warrantless entry ends, and the need to obtain a warrant begins, with the dousing of the last flame[,]" the Court stated:
Prompt determination of the fire's origin may be necessary to prevent its recurrence, as through the detection of continuing dangers such as faulty wiring or a defective furnace. Immediate investigation may also be necessary to preserve evidence from intentional or accidental destruction. And, of course, the sooner the officials complete their duties, the less will be their subsequent interference with the privacy and the recovery efforts of the victims. For these reasons, officials need no warrant to remain in a building for a reasonable time to investigate the cause of a blaze after it has been extinguished. And if the warrantless entry to put out the fire and determine its cause is constitutional, the warrantless seizure of evidence while inspecting the premises for these purposes also is constitutional.
[Id. at 510, 98 S.Ct. at 1950, 56 L.Ed.2d at 498-99 (footnotes omitted).]
The Court also rejected defendant's argument that the firefighters' right to conduct a warrantless investigation of the site of the fire ended when they departed the scene at 4 a.m. and that they were required to obtain a warrant during the intervening four-hour period before they returned to resume the investigation in daylight:
Little purpose would have been served by their remaining in the building, except to remove any doubt about the legality of the warrantless search and seizure later that same morning. Under these circumstances, we find that the morning entries were no more than an actual continuation of the first, and the lack of a warrant thus did not invalidate the resulting seizure of evidence.
The year after it decided Michigan v. Tyler, the Supreme Court decided Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), which involved the search of an apartment in which a police officer had been killed while attempting to arrest a drug dealer. Following the crime, police officers conducted a four-day search of the entire apartment, which included opening drawers, closets and cupboards and inspecting their contents, emptying clothing pockets, and pulling up sections of carpet and removing them for examination. Id. at 389, 98 S.Ct. at 2411, 57 L.Ed.2d at 298. The Arizona Supreme Court upheld this search on the ground that a warrantless *425 search of the scene of a homicide is constitutionally Id. at 389, 98 S.Ct. at 2412, 57 L.Ed.2d at 298 permissible. The Supreme Court rejected this broad "murder scene" exception to the warrant requirement. Id. at 392-95, 98 S.Ct. at 2413-15, 57 L.Ed.2d at 299-302. However, the Court reaffirmed the emergency aid exception to the warrant requirement:
We do not question the right of the police to respond to emergency situations. Numerous state and federal cases have recognized that the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid. Similarly, when the police come upon the scene of a homicide they may make a prompt warrantless search of the area to see if there are other victims or if a killer is still on the premises. Cf. Michigan v. Tyler, supra, 436 U.S., at 509-510, 98 S.Ct., at 1950-1951. "The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." Wayne v. United States, 318 F.2d 205, 212 (opinion of Burger, J.). And the police may seize any evidence that is in plain view during the course of their legitimate emergency activities. Michigan v. Tyler, supra, 436 U.S., at 509-510, 98 S.Ct., at 1950-1951; Coolidge v. New Hampshire, 403 U.S., [443] at 465-466, 91 S.Ct., [2022] at 2037-2038[, 29 L.Ed.2d 564 (1971)].
[Id. at 392-93, 98 S.Ct. at 2413, 57 L.Ed.2d at 300 (footnotes omitted).]
Moreover, consistent with this reaffirmation of the emergency aid doctrine, the Court concluded its discussion of the search and seizure issue with the statement that "[t]o what extent, if any, the evidence found in Mincey's apartment was permissibly seized under established Fourth Amendment standards will be for the Arizona courts to resolve on remand." Id. at 395 n. 9, 98 S.Ct. at 2415, 57 L.Ed.2d at 302.
On that remand, the Arizona Supreme Court upheld the admissibility under the emergency aid exception of the evidence observed in plain view by the homicide detective who responded to the scene ten minutes after the murder. Arizona v. Mincey, 130 Ariz. 389, 636 P.2d 637, 648-51 (1981). The court concluded that the homicide detective's entry into the apartment "was merely a continuation of the initial emergency entry" by other police officers in response to the shooting, and therefore, the homicide detective "could make plain view seizures ... of evidence he observed in plain view." Id. at 649. The Supreme Court denied defendant's petition for a writ of certiorari to review this decision. Mincey v. Arizona, 455 U.S. 1003, 102 S.Ct. 1638, 71 L.Ed.2d 871 (1982).
Consistent with the Supreme Court of the United States' decision in Michigan v. Tyler and the Arizona's Supreme Court's decision on remand in Mincey, the courts in other states have upheld the validity of seizures of evidence observed in plain view at a crime scene to which the police responded under the emergency aid exception, even when there is some delay between the plain view observation and seizure of the evidence and the seizure is made by different police officers than the ones who initially responded to the emergency. See, e.g., State v. Spears, 560 So.2d 1145, 1147-51 (Ala.Crim.App.1989), cert. denied, 1990 Ala. LEXIS 310 (Ala. 1990); Wofford v. State, 330 Ark. 8, 952 S.W.2d 646, 652-54 (1997); State v. Magnano, 204 Conn. 259, 528 A.2d 760, 761-66 (1987); Allen v. State, 638 So.2d 577, 578-80 (Fla.Dist.Ct.App.), rev. denied, 649 So.2d 232, 1994 Fla. LEXIS 1892 (Fla. 1994); State v. Johnson, 413 A.2d 931, *426 932-34 (Me.1980); Wengert v. State, 364 Md. 76, 771 A.2d 389, 394-401 (2001); Smith v. State, 419 So.2d 563, 568-74 (Miss.1982), cert. denied, 460 U.S. 1047, 103 S.Ct. 1449, 75 L.Ed.2d 803 (1983); State v. Tidwell, 888 S.W.2d 736, 740-43 (Mo.Ct.App.1994); State v. Jolley, 312 N.C. 296, 321 S.E.2d 883, 886-88 (1984); State v. Anderson, 42 Or.App. 29, 599 P.2d 1225, 1228-30 (1979), cert. denied, 446 U.S. 920, 100 S.Ct. 1857, 64 L.Ed.2d 275 (1980); State v. Martin, 274 N.W.2d 893, 896-97 (S.D.1979); State v. Coulter, 67 S.W.3d 3, 42-45 (Tenn.Crim.App.2001); Hunter v. Commonwealth, 8 Va.App. 81, 378 S.E.2d 634, 635-36 (1989); LaFournier v. State, 91 Wis.2d 61, 280 N.W.2d 746, 748-51 (1979); see generally, Wayne R. LaFave, Search & Seizure § 6.5(e) at 447-49 (4th ed. 2004). The essential rationale for the admission of evidence seized under such circumstances is set forth in Magnano:
[W]hen a law enforcement officer enters private premises in response to a call for help, and during the course of responding to the emergency observes but does not take into custody evidence in plain view, a subsequent entry shortly thereafter, by detectives whose duty it is to process evidence, constitutes a mere continuation of the original entry.... This conclusion ... furthers the goal of effective law enforcement, and promotes the rationale and purpose of the plain view doctrine.
[528 A.2d at 764.]
Although our courts have not previously considered whether a reentry into a residence to seize evidence observed in plain view during an initial entry under the emergency aid exception may be made without a warrant, they have recognized in other contexts that a reentry by police officers into private premises a short time after a lawful initial entry may be viewed as merely a continuation of that initial entry. For example, in State v. Henry, 133 N.J. 104, 627 A.2d 125 (1993), an undercover police officer made an initial entry into an apartment with the occupants' consent to purchase drugs. Id. at 107, 627 A.2d 125. Approximately fifteen to twenty minutes later, a backup team reentered the apartment without a warrant to arrest the persons who had sold the drugs. Id. at 113, 627 A.2d 125. In concluding that the backup team's warrantless entry to arrest the drug sellers was a continuation of the prior consensual entry by the undercover officer to purchase drugs, the Court characterized the two police entries into the apartment "as components of a single, continuous, and integrated police action." Id. at 116, 627 A.2d 125. Similarly, we recently concluded in State v. Finesmith, 406 N.J.Super. 510, 519-21, 968 A.2d 715 (App.Div.2009), that a reentry into a residence to continue a search for a computer that a search warrant authorized the police to seize constituted a "reasonable continuation" of the search authorized by the warrant.
Following the Court's reasoning in Henry, we conclude that the reentry into defendant's apartment by the Prosecutor's Office investigators to seize evidence observed in plain view by the Highland Park police officers during their initial entry was merely another "component[] of a single, continuous, and integrated police action" conducted under the emergency aid exception to the warrant requirement. 133 N.J. at 116, 627 A.2d 125. The evidence seized by the Prosecutor's Office investigators was all observable by the Highland Park police officers when they entered defendant's apartment in response to her sister's 9-1-1 call. Sergeant Vassallo took specific note of what appeared to be blood and vomit on the bedding beneath the deceased child and of the handwritten *427 notes, documents and pictures in the kitchen that were subsequently seized by the prosecutor's office investigators. Although Sergeant Vassallo did not specifically mention the knives in the kitchen sink and on the hallway floor that the Prosecutor's Office investigators also seized, those items would have been within view during the Highland Park police officers' initial entry into the apartment, since they walked through the kitchen and hallway.
Moreover, a period of only thirty to forty-five minutes elapsed between when the Highland Park police officers secured the apartment and the Prosecutor's Office investigators arrived to process the crime scene. There is no evidence that the Prosecutor's Office investigators searched any part of defendant's apartment that was not observable upon the initial entry by the Highland Park police officers or that Prosecutor Office investigators seized any item of evidence in addition to items that could and undoubtedly would have been seized by Highland Park officers if they were authorized to complete the investigation. Therefore, we conclude that, as in Magnano, 528 A.2d at 764, the subsequent entry into defendant's apartment by the Prosecutor's Office investigators "whose duty [was] to process [murder scene] evidence, constituted a mere continuation of the original entry" by the Highland Park police officers who observed the evidence in plain view.
Affirmed.
NOTES
[1] The motion judge also concluded that the evidence seized on February 22, 2005 was admissible under the inevitable discovery doctrine. Since we conclude that the judge correctly ruled that this evidence was admissible because it was observed during the Highland Park police officers' emergency aid entry into defendant's apartment, there is no need to consider this alternative ground for admission of the evidence.