1 A.3d 604

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
ALICE O'DONNELL, DEFENDANT–APPELLANT.

Argued April 26, 2010—Decided July 20, 2010.

*Stephen P. Hunter*, Assistant Deputy Public Defender, argued the cause for appellant (*Yvonne Smith Segars*, Public Defender, attorney).

*Joie D. Piderit*, Assistant Prosecutor, argued the cause for respondent (*Bruce J. Kaplan*, Middlesex County Prosecutor, attorney).

*Frank Muroski*, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (*Paula T. Dow*, Attorney General, attorney).

PER CURIAM.

The judgment of the Appellate Division is affirmed substantially for the reasons expressed in the thoughtful and thorough opinion by Judge Skillman. *State v. O'Donnell*, 408 *N.J.Super.* 177, 974 *A.*2d 420 (App.Div.2009). We add only the following.

According to defendant Alice O'Donnell, the question presented in this appeal is "[w]hether the warrantless entry into defendant's home for the specific purpose of searching and seizing evidence in a criminal murder investigation ... 30 to 45 minutes after the original emergency was over and the police had exited and secured the home" violated constitutional strictures. Stripped to its bare bones, the question presented is whether the police are allowed to remain at a murder site after a proper entry under the emergency aid exception to the warrant requirement, thereby

authorizing the lawful seizure of evidence in plain view. Subject to the limitations expressed both by the Appellate Division and below, the answer to that question is "yes."

More than thirty years ago, the Supreme Court of the United States rejected a broad "murder scene" exception to the warrant requirement, *Mincey v. Arizona*, 437 *U.S.* 385, 392–95, 98 *S.Ct.* 2408, 2413–15, 57 *L.Ed.*2d 290, 299–302 (1978), an exception also repudiated in New Jersey. *State v. Faretra*, 330 *N.J.Super.* 527, 531, 750 *A.*2d 166 (App.Div.) (refusing to adopt "crime scene exception" to warrant requirement), *certif. denied,* 165 *N.J.* 530, 760 *A.*2d 784 (2000); *State v. Damplias*, 282 *N.J.Super.* 471, 481, 660 *A.*2d 570 (App.Div.1995) ("There is no 'murder scene exception' to the Fourth Amendment." (citing *Mincey, supra* )), *certif. denied,* 154 *N.J.* 607, 713 *A.*2d 498 (1998). In the absence of such an exception, the question of whether, after responding to an emergency call and lawfully entering a homicide scene, a later re-entry into a police-secured location, followed by the plain view seizure of evidence therefrom, constitutes "merely a continuation of [an] initial emergency entry[,]" *Arizona v. Mincey*, 130 *Ariz.* 389, 636 *P.*2d 637, 649 (1981), *cert. denied,* 455 *U.S.* 1003, 102 *S.Ct.* 1638, 71 *L.Ed.*2d 871 (1982), remains "for the ... courts to resolve[.]" *Mincey, supra,* 437 *U.S.* at 395 n. 9, 98 *S.Ct.* at 2415 n. 9, 57 *L.Ed.*2d at 302 n. 9.

When determining the propriety of a warrantless seizure, "[t]he question is not whether the police could have done something different, but whether their actions, when viewed as a whole, were objectively reasonable." *State v. Bogan*, 200 *N.J.* 61, 81, 975 *A.*2d 377 (2009) (citing *State v. Diloreto*, 180 *N.J.* 264, 278, 850 *A.*2d 1226 (2004)). In that vein, the determination of whether any portion of a search—either the initial entry, the police presence, or the seizure itself—is "reasonable" under both the Federal and State Constitutions [1] implicates relevant long-standing law and

---

[1] *See U.S. Const.* amend. IV; *N.J. Const.* art. I, ¶ 7; *see also State v. Boykins,* 50 *N.J.* 73, 78, 232 *A.*2d 141 (1967) ("The Fourth Amendment forbids only such searches as are unreasonable.")

practices. *See State v. Slockbower,* 79 *N.J.* 1, 19 n. 4, 397 *A.*2d 1050 (1979) (Schreiber, J., concurring) (noting that courts "on occasion ha[ve] also looked to history to discern whether certain types of government intrusion were perceived to be objectionable by the Framers of the Fourth Amendment" (citations omitted)).

■ The reasonableness of continuous police presence at the location initially accessed under the emergency aid exception is defined by the facts presented. *See State v. Boretsky,* 186 *N.J.* 271, 280, 894 *A.*2d 659 (2006) (defining "three-part test when determining whether the emergency aid doctrine permits a warrantless search" as (1) "[t]he public official must have an objectively reasonable belief, even if later found to be erroneous, that an emergency demands immediate assistance in order to protect or preserve life, or to prevent serious injury; [ (2) ] the provision of assistance must be the prime motive for the public official's warrantless entry; and, [ (3) ] any search must be limited to those places that have a nexus to the emergency" (citing *State v. Cassidy,* 179 *N.J.* 150, 161, 843 *A.*2d 1132 (2004))). Those principles guide our inquiry, and define the circumstances presented here as a continuing emergency.[2]

In the limited context of this case—where the police responded to a 9-1-1 call and, in an admittedly proper invocation of the emergency aid exception to the warrant requirement, discovered the body of a dead child—it is relevant that New Jersey law has long required that, in all cases of "[v]iolent deaths, whether apparently homicidal, suicidal or accidental" or "[d]eaths under suspicious or unusual circumstances[,]" *N.J.S.A.* 52:17B–86(a) and (c), the county medical examiner "shall fully investigate the essen-

---

[2] For that reason, we need not conclude, as the Appellate Division has, that the "reentry into defendant's apartment by the Prosecutor's Office investigators to seize evidence observed in plain view by the Highland Park police officers during their initial entry was merely another 'component[ ] of a single, continuous, and integrated police action' conducted under the emergency aid exception to the warrant requirement." *O'Donnell, supra,* 408 *N.J.Super.* at 186–87, 974 *A.*2d 420 (quoting *State v. Henry,* 133 *N.J.* 104, 116, 627 *A.*2d 125 (1993)).

tial facts concerning the causes of death" and "shall take possession of any objects or articles which, in his opinion, may be useful in establishing the cause of death, and deliver them to the county prosecutor." *N.J.S.A.* 52:17B–87.[3]

When, as here, a dead body is discovered by police responding to an emergency call, those statutory provisions are material to determining the reasonableness of post-entry police action. It readily can be said that there is little substantive difference between the statutory mandate that the medical examiner collect evidence and deliver it to the county prosecutor, and trained police investigators performing exactly the same function and to the same effect. No doubt, the legislative scheme governing the acts of the medical examiner, standing alone, is not dispositive of the question of the reasonableness of a police search. That said, long-established law and procedures in respect of government's obligations in dealing with dead bodies when the cause of death has not yet been determined will inform whether a continuing police presence at a death scene was reasonable. Thus, in the absence of a warrant, the analysis should account for the entire continuum of police action, from entry to seizure: whether entry into an otherwise constitutionally protected area is permitted under an exception to the warrant requirement; whether a continued police presence is permissible; and whether, once there, the warrantless seizure is permitted under a recognized constitutional doctrine.

In this case, where the police gained access and seized evidence without a warrant, the propriety of the access indisputably was established by the emergency aid exception to the warrant requirement; the continued police presence at the site of the dead

---

[3] In a similar vein, we observe that, since 1880, New Jersey has required that police officers responding to an emergency call must notify the county medical examiner upon discovery of an unidentified dead body. *See L.* 1880, *c.* 59, § 7 (presently codified at *N.J.S.A.* 40A:9–57 ("Where in any municipality the police ascertain the finding or discovery of an unidentified dead body, the chief of police or other police officer on duty shall forthwith notify the county medical examiner of such finding or discovery.")).

body of a six-year-old child was authorized until the scene could be turned over to the medical examiner without a break in custody; and the seizure of evidence of a crime was authorized by the plain view doctrine. In respect of the discrete issue presented in this appeal—whether it was proper for the police to remain on the premises and seize evidence after discovery of the dead body abated the initial emergency—the conclusion is, to us, clear: because the corpse remained at what was obviously the death scene and the police had the obligation to retain control of the premises until that control could be transferred to the medical examiner, the police had a continuing right to remain present at the scene. Thus, their continued presence was consonant with constitutional principles, and the plain view seizures performed during that period thus were constitutionally authorized.[4]

*For affirmance*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—7.

*Opposed*—None.

---

[4] The distinctions we draw are highlighted in stark relief by additional, relevant facts of this case. On the day following the initial entry, discovery of the child's dead body and resulting seizures, the police again accessed the premises and seized additional items. The trial court invalidated the following day's search and seizure, a determination the State rightly has not appealed. That ruling recognizes that, once the medical examiner removed the body, no exception to the warrant requirement would authorize continued police access to the premises and, hence, that warrantless entry and seizure could not survive constitutional scrutiny.