**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1801-14T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

HUGO RAMIREZ,

    Defendant-Appellant.

_____

Submitted November 28, 2016 — Decided  March 7, 2017

Before Judges Sabatino and Nugent.

On appeal from Superior Court of New Jersey,
Law Division, Middlesex County, Indictment No.
12-12-1741.

Joseph E. Krakora, Public Defender, attorney
for appellant (Al Glimis, Assistant Deputy
Public Defender, of counsel and on the brief).

Christopher S. Porrino, Attorney General,
attorney for respondent (Jennifer E. Kmieciak,
Deputy Attorney General, of counsel and on the
brief).

PER CURIAM

Following the denial of his motion to suppress a crowbar

seized from a vehicle in which he was a passenger, defendant Hugo

Ramirez pled guilty to third-degree attempted burglary, N.J.S.A.

2C:18-2, and a judge sentenced him to a three-year term of probation and ordered him to pay certain fines and assessments. Defendant appeals from the denial of his suppression motion. We affirm.

Two law enforcement officers testified at the suppression hearing. Officer Luis Perez testified that at approximately 11:42 p.m. on June 15, 2012, he responded to a report of a burglary in progress at a Perth Amboy address. When he arrived at the location, a first floor resident pointed down the street and said, "they're trying to get away." Perez looked down the street and observed a man run toward and enter a blue Ford Explorer parked in front of a neighboring home. Between ten and twelve additional officers arrived moments later.

Perez and the other officers conducted a "felony stop" of the vehicle and ordered the occupants out. Defendant and four others exited with their hands raised. The officers then handcuffed them and put them in squad cars. The side doors of the Ford remained open.

Although light from the patrol cars and the officers' handheld flashlights illuminated the Explorer, the officers could not see

into the vehicle's cargo area because the rear window was tinted.[1] Apprehensive that someone might be hiding in the cargo area, several officers lined up in tactical formation while Perez opened the vehicle's rear door. No one else was in the Explorer. When the officers opened the vehicle's rear door, they were not looking for physical evidence and did not observe the crowbar.

Perez returned to the location of the attempted burglary and observed pry marks on the residence's rear basement door. He also interviewed the resident who called the police as well as another neighbor who witnessed the attempted break-in. The witnesses reported they heard loud banging noises and observed three men attempting to break into the residence. When confronted, the trio fled and the witnesses called the police. Both witnesses identified three arrestees, including defendant, as the perpetrators.

Detective Brian Kelleher also testified for the State. A crime scene investigator, he arrived at the scene of the attempted

---

[1] The area inside the Explorer, immediately in front of the rear door, had a seat or seats that folded down so the space could be used to transport or store items. Hence the parties' reference to the "cargo" area. Occasionally, a party or the court referred to the area as the "trunk."

burglary at approximately 12:19 a.m.[2] Detective Kelleher "processed" the burglary scene by photographing the exterior of the building, the interior of an apartment, and the rear door, which showed signs of forced entry. Specifically, the door was broken, the jamb was ajar, and there appeared to be pry marks from an unknown object around the doorknobs.

After photographing the building where the attempted burglary occurred, the detective proceeded to the scene of the motor vehicle stop. According to the detective, the scene consisted of "a car in the middle of the street." All the doors were open, including the rear door. Kelleher photographed the cargo area and observed, in plain view, a crowbar, a black hat,[3] and other items. Believing the crowbar and hat might have been used in the attempted burglary, Kelleher collected them as evidence.

Following the hearing, the motion judge issued a written opinion granting defendant's motion as to the hat but denying it as to the crowbar. Because all occupants had been secured at the

---

[2] When the attorneys questioned the detective, they often referred to the "scene" without distinguishing between the scene of the attempted burglary and the scene of the vehicle stop. Consequently, the record is at times ambiguous.

[3] The motion judge granted defendant's motion as to the black hat, so we need not address the discovery and seizure of that item. The State has not cross-appealed from the order suppressing the hat.

time of the search, the judge rejected the State's argument that the crowbar was seized as part of a search incident to a lawful arrest. The judge determined, however, that the "automobile" exception to the warrant requirement permitted police to open the vehicle's rear door without a search warrant. The judge found the stop was unexpected, an eyewitness had identified a man entering the Explorer as the perpetrator of an attempted burglary, and the incident unfolded at approximately midnight. These circumstances, according to the motion judge, created an exigency justifying the warrantless opening of the Explorer's rear door as a "means necessary to ensure police safety." After determining the motor vehicle exception permitted Perez and the other officers to open the rear door, the judge concluded the plain view exception to the warrant requirement applied to Kelleher's discovery and seizure of the crowbar.

On appeal, defendant argues:

POINT I

> BECAUSE THE POLICE LACKED A WARRANT AND THERE WAS NEITHER PROBABLE CAUSE NOR EXIGENT CIRCUMSTANCES, THE COURT BELOW ERRED IN FINDING THAT THE AUTOMOBILE EXCEPTION TO THE WARRANT REQUIREMENT JUSTIFIED THE OPENING AND SEARCH OF THE TRUNK OF THE EXPLORER, AND THE SEIZURE OF THE CROWBAR FROM THE AUTOMOBILE WAS UNCONSTITUTIONAL.

<u>POINT II</u>

> BECAUSE THE CRIME SCENE DETECTIVE WAS NOT
> LAWFULLY IN THE VIEWING AREA AND THE VIEWING
> OF THE EVIDENCE WAS NOT INADVERTENT, THE
> CROWBAR WAS NOT IN PLAIN VIEW.

In reviewing a motion to suppress, "we accord deference to the factual findings of the trial court." <u>State v. Scriven</u>, 226 <u>N.J.</u> 20, 32 (2016). That is particularly so as "to those findings of the trial judge which are substantially influenced by his [or her] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." <u>State v. Johnson</u>, 42 <u>N.J.</u> 146, 161 (1964). If satisfied that the trial court's findings could reasonably have been reached on sufficient, credible evidence present in the record, our task is complete and we will not disturb the result. <u>Id.</u> at 162. Our review of the trial court's legal conclusions is plenary. <u>State v. Rockford</u>, 213 <u>N.J.</u> 424, 440 (2013).

Preliminarily, we note the trial court appropriately rejected the State's argument the search-incident-to-arrest exception to the warrant requirement justified the search and seizure of the crowbar. <u>See</u> <u>State v. Eckel</u>, 185 <u>N.J.</u> 523, 541 (2006) ("Once the occupant of a vehicle has been arrested, removed and secured elsewhere, the considerations informing the search incident to arrest exception are absent and the exception is inapplicable.").

We turn to the State's argument concerning the plain view exception to the warrant requirement. The plain view exception has three elements:

> (1) "the police officer must be lawfully in the viewing area"; (2) "the officer has to discover the evidence 'inadvertently,' meaning that he did not know in advance where evidence was located nor intend beforehand to seize it"; and (3) "it has to be 'immediately apparent' to the police that the items in plain view were evidence of a crime, contraband, or otherwise subject to seizure."
>
> [State v. Reininger, 430 N.J. Super. 517, 535-36 (App. Div.) (quoting State v. Bruzzese, 94 N.J. 210, 237 (1983), cert. denied, 465 U.S. 1030, 104 S. Ct. 1295, 79 L. Ed. 2d 695 (1984)), certif. denied, 216 N.J. 267 (2013).][4]

As Kelleher made his plain view observation after the vehicle's rear door had been opened, we must determine whether the State proved the plain view exception's first element, namely, whether he was lawfully in the viewing area. Defendant argues he was not. He asserts "the police had no indication whatsoever, and certainly no probable cause, that there was a person secreted in the trunk/hatchback area." Defendant emphasizes the police heard no noises coming from that area and they had no information from

---

[4] Our Supreme Court has since held prospectively "that an inadvertent discovery of contraband or evidence of a crime is no longer a predicate for a plain-view seizure." State v. Gonzales, 227 N.J. 77, 82 (2016).

witnesses that more than four males were involved in the attempted burglary. Consequently, all persons were accounted for once the five occupants were removed from the Explorer.

Additionally, defendant argues, "[e]ven if there was probable cause to search the passenger compartment of the car, . . . there was no exigency that would have made it impractical for the police to obtain a search warrant[.]" Lastly, defendant contends Detective Kelleher was not lawfully in the viewing area of the interior of the Explorer and his discovery of the crowbar was not inadvertent. Rather, he was processing a scene without a warrant. Defendant claims the police should have closed the doors of the car and requested a search warrant before permitting Detective Kelleher to photograph the Explorer's interior.

Concerning the motion judge's decision, the State asserts that

> [w]hile he found [the police] action reasonable under State v. Pena-Flores, . . . the police were not even searching for criminal evidence and thus the automobile exception as set forth in Pena-Flores is not relevant. Instead, the opening of the hatchback/trunk area was a lawful protective sweep for hidden people who may pose a danger to the officers on the scene.

The motion judge analyzed the State's proofs under precedent applicable when the motion judge rendered his opinion. The relevant law upheld warrantless searches of a vehicles "where (1)

the stop [was] unexpected; (2) the police [had] probable cause to believe that the vehicle contain[ed] contraband or evidence of a crime; and (3) exigent circumstances exist[ed] under which it [was] impracticable to obtain a warrant." State v. Pena-Flores, 198 N.J. 6, 28 (2009)(citations omitted).[5]  Defendant argues the judge misapplied this exception to the warrant requirement.  The State argues this exception was irrelevant.  We need not, however, decide whether the facts of this case, including the concern for the safety of the law enforcement officers, constituted exigent circumstances.  We conclude the need for a protective sweep justified the officers' conduct.

The concept of the protective sweep was announced by the United States Supreme Court in Maryland v. Buie, 494 U.S. 325, 110 S. Ct. 1093, 108 L. Ed. 2d 276 (1990), and adopted by the New Jersey Supreme Court in State v. Davila, 203 N.J. 97, 115-16 (2010).  "[W]hile the protective sweeps in Buie and Davila were aimed at protecting officers from danger that may be encountered in a home from individuals lurking therein, this rationale applies

---

[5]  The judge analyzed the State's proofs under State v. Pena-Flores, 198 N.J. 6 (2009).  Defendant's case predated State v. Witt, 223 N.J. 409 (2015), which modified the State's required showing to satisfy the motor vehicle exception to the warrant requirement.  The Court stated the new rule of law it announced in Witt was to be applied "purely prospectively."  Id. at 449.

equally to limited protective searches of vehicles[.]"  State v. Gamble, 218 N.J. 412, 433 (2014) (citing Davila, supra, 203 N.J. at 129).

Here, the motion judge found credible Perez's testimony that the police searched the Explorer's cargo area out of concern for the officers' safety.  The State's evidence supported the judge's credibility determination as well as his conclusion that the concern for the officers' safety justified opening the Explorer's rear door.

Defendant argues that even if the officers were justified in opening the door, when they found no one inside, they should have closed the doors and secured the Explorer.  After doing so, if they wished to have a crime scene investigator process the Explorer, they should have attempted to obtain a search warrant. We are unpersuaded by this argument.

We have concluded the officers lawfully opened the Explorer's rear door.  The motion record discloses no significant delay between the time police opened the door and the time Kelleher, while photographing the rear cargo compartment, observed the crowbar in plain view.  See  State v. O'Donnell, 408 N.J. Super. 177, 187 (App. Div. 2009) (finding a period of thirty to forty-five minutes between the time officers secured an apartment and an investigator arrived to process the crime scene to be a "mere

continuation of the original entry"), aff'd o.b., 203 N.J. 160 (2010), cert. denied, 562 U.S. 1094, 131 S. Ct. 803, 178 L. Ed. 2d 537 (2010).[6]

Defendant's remaining arguments are without sufficient merit to warrant further discussion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[6] Opening the Explorer's rear door and looking in is arguably a lesser intrusion than a protective sweep. In State v. Mai, 202 N.J. 12, 23 (2010), the Supreme Court noted, "[p]lain logic demands that the principles that govern whether a passenger of a vehicle lawfully can be ordered out of the vehicle must apply with equal force to whether a police officer is entitled, as a corollary and reasonable safety measure, to open the door as part of issuing a proper order to exit." Here, defendant does not contend the police lacked authority to stop the Explorer and order the occupants to exit.

A-1801-14T2