**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3622-16T4

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

TIMOTHY C. SOTO, JR.,

 Defendant-Appellant.

_____

> Submitted January 8, 2019 – Decided January 30, 2019
>
> Before Judges Hoffman and Geiger.
>
> On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 15-05-0582.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Michele E. Friedman, Assistant Deputy Public Defender, of counsel and on the brief).
>
> Andrew C. Carey, Middlesex County Prosecutor, attorney for respondent (Joie D. Piderit, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Timothy C. Soto, Jr. appeals from an October 11, 2016 order denying his motion to suppress a handgun seized from his vehicle. We affirm.

Following a motor vehicle accident, defendant took out a gun and fired several shots into the air. At his plea hearing, however, defendant testified he only pointed his unregistered handgun in the direction of the victim. Defendant then fled the scene, driving down Route 1 South at more than 100 miles per hour.

Officer Badawy of the North Brunswick Police Department received a report of possible shots fired and responded to the scene. Badawy saw a young man, Gbenga Oyetimbo, walking down the street, talking on his cell phone. Badawy testified Oyetimbo appeared "very frantic."

Badawy testified Oyetimbo stated he was involved in an automobile collision where gunshots were fired. Oyetimbo told Badawy he was on the phone with a friend who was pursuing the shooter, and that both vehicles were on Route 1 South in the area of Finnegan's Lane. Badawy testified Oyetimbo told him defendant was driving a black pickup truck, and Oyetimbo's friend, the driver following the truck, was in a black Mercedes with his hazard lights on.

Officer Badawy got back into his vehicle and drove towards the area of the civilian car chase. Officer Pormilli of the North Brunswick Police Department followed in a separate police car.

In the interim, Officer Gassman of the South Brunswick Police Department was dispatched to the area of Route 522 and Route 1, with instructions to stop a black pickup track potentially involved in the same shots fired incident in North Brunswick. When Gassman arrived in the area, he saw the truck driving at a fast speed and began following it. Although Gassman initially stopped following the truck because it was driving too fast, at some point, he reinitiated the pursuit when he saw the truck with its headlights off. The truck drove the wrong direction onto Independence Way. Gassman followed the truck the wrong way down the road. The truck stopped, and Gassman stopped about ten feet behind it. Officer Sites of the South Brunswick Police Department, who had driven the correct direction down Independence Way at the same time, also arrived. Badawy also arrived on the scene at around this time and saw the black pickup truck on the grassy island on a jug-handle.

From his loudspeaker, Gassman ordered defendant to step out of the truck and get onto the ground. Defendant complied and Gassman ran over and handcuffed him.

 A-3622-16T4

While Gassman was handcuffing defendant, Sites approached the truck at gunpoint, where he saw co-defendant John M. Haley in the front passenger's seat, and ordered him to show his hands. Sites testified Haley appeared to be intoxicated and had difficulty complying with the order. Gassman helped Sites get Haley out of the truck, onto the ground, and into handcuffs.

Officer Badawy testified the truck's back windshield and back passenger windows were tinted, making it difficult to see in through the rear windows. Badawy then proceeded to clear the truck to ensure there were "no other armed subjects or any other threat inside" since Gassman and Sites had not. Badawy looked through the truck's non-tinted windows and did not see any movement inside the truck. Fifteen seconds later, Badawy can be heard on the motor vehicle recording (MVR) saying: "looks clear"– a statement he later testified was only meant to refer to the driver's seat and front passenger seat. Badawy testified he could not see into the backseat from his view through the front windshield, because the front seat's headrests obstructed his view.

Badawy believed there was a weapon in the car and needed to ascertain whether there might be someone hiding in the back section of the passenger compartment. In order to unlock the pickup truck's smaller rear door, Badawy had to first open the front door. When Badawy opened both doors he saw a

handgun with a partially-inserted magazine and empty magazine next to it on the driver's side floorboard by the brake and gas pedals. A bullet was seen on the seat.

After announcing there was a gun, Badawy continued to clear the remainder of the truck, including the passenger side, and the enclosed pickup bed. Because no one was hiding in the truck, the gun was no longer a threat so it was left inside of the vehicle. Badawy did not conduct a formal search of the vehicle nor take anything out of the vehicle at the scene.

Defendant and Haley were transported to police headquarters. Badawy testified defendant provided consent to search his truck during his interview at headquarters.

Defendant was indicted for second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (count one); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count two); three counts of fourth-degree aggravated assault, N.J.S.A. 2C:12-1(b)(4) (counts three through five); fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a)(2) (count six); and second-degree eluding, N.J.S.A. 2C:29-2(b) (count seven).

Defendant moved to suppress the handgun. Three officers testified at the suppression hearing. The MVR that captured the encounter was admitted into

evidence. At the conclusion of the hearing, the trial court ruled the police had the right to reenter defendant's vehicle after observing the gun in plain view during the protective sweep. In its ruling, the trial court described Badawy's actions in clearing the vehicle:

> Now what's very significant here is what's observed on the video. When Officer Badawy approached the vehicle to look for other occupants, he had, and it's clearly observed, he had his flashlight in one hand and he had his gun out in the other hand. He went to open the door. He first holstered his weapon and opened the door. As soon as he opened the door, he pulled his gun out again with his flashlight in the other hand and he had two other officers assisting him. It was clearly evident that there was another officer behind him as he looked in with his gun drawn and his flashlight out. He looks in the front. It appears that he's looking quickly . . . . He says he observes . . . a gun on the floorboard, [and] then he looks in the back. And he's looking in the back with his gun drawn and with his flashlight out. Now, why is that significant?
>
> For a couple reasons. Number one, if he's looking for evidence of a crime, there's no need for him to have his gun out, pointed in the backseat as he's looking at backseat. . . . [unless h]e was looking to see if there [was] anyone there so he could secure the backseat. . . . Number two, it's evident based on how quick and cursory the search is that all he's doing is trying to secure the vehicle because within seconds, within seconds, he peeks his head in, sees it's secure, and he's out of the vehicle and there's no more search.
>
> So I think that video reveals a lot. It reveals that the officer was attempting to secure the area. That's

6

evidenced by the fact that he's looking in with his gun drawn into the vehicle and he's backed up by another officer with gun drawn. That . . . reveals that these officers were more concerned about their safety than to look for evidence of a crime. If they were looking for evidence of a crime, no gun would be drawn and they would have been in that vehicle, tearing that vehicle apart.

The trial court judge found the officers credible. In particular, the trial court found Badawy's testimony "consistent," "logical," and "highly credible," noting: "It didn't seem exaggerated or contrived. It was forthcoming. I didn't find any inherent inconsistencies in his testimony, nor did I find his testimony inconsistent with the testimony of the other officers." The trial court also found "his explanation reasonable and it had a ring of truth of it. So in all measures, I find his testimony highly credible. I don't find that it had been impeached in any manner or any significant manner by the defense."

With regard to conducting a protective sweep of the vehicle, the trial court engaged in the following analysis. The stop was made at 2:00 a.m. The officers knew a firearm was involved and had been fired. They did not know if they had all the people involved in the incident. The officers could not see in the backseat. The police have a right and a responsibility to secure their safety and had the right to enter and secure the vehicle without a warrant. The trial court

7

later clarified that the reference to securing the vehicle meant a protective sweep to secure the officer's safety.

The trial court concluded: (1) the police discovered the gun inadvertently since their purpose in entering the vehicle was to determine if there was someone in the backseat who posed a risk, not to find the gun; (2) the gun could be seized under the plain view doctrine; (3) the police had probable cause to believe the gun they saw was the gun that had been fired in North Brunswick; and (4) the gun is admissible in evidence.

Following the denial of his suppression motion, defendant entered into a plea agreement, pleading guilty to counts one and three in exchange for a recommended sentence of a five-year term with three and one-half years of parole ineligibility on count one, a concurrent eighteen-month term on count three, and the dismissal of the remaining counts. Defendant was sentenced in accordance with the plea agreement. This appeal followed.

Defendant argues:

> POINT I
>
> THE COURT COMMITTED REVERSIBLE ERROR IN RULING THAT THE OFFICER WAS PERMITTED TO SWEEP THE TRUCK FOR PEOPLE THAT MIGHT BE HIDING IN THE BACKSEAT, AND THAT HIS DISCOVERY OF EVIDENCE DURING THAT SO-CALLED "SWEEP" FELL

WITHIN THE SCOPE OF THE PLAIN VIEW DOCTRINE.

    A.    The Search of the Truck Falls Outside the Purview of a Protective Person-Sweep, Because the Officer Lacked a Reasonable, Articulable Basis to Suspect There Were People Hiding in the Truck's Backseat, and He Searched and Found the Gun in an Area Where an Average Person Could Not Be Hiding.

    B.    The Plain View Doctrine is Inapplicable, Because the Officer Was Not Lawfully in the Viewing Area When He Found the Evidence, and His Discovery of It Was Not Inadvertent.

Having reviewed the facts in light of the applicable principles of law, we find no merit in defendant's arguments.

"Appellate review of a motion judge's factual findings in a suppression hearing is highly deferential." State v. Gonzales, 227 N.J. 77, 101 (2016) (citing State v. Hubbard, 222 N.J. 249, 262 (2015)). "[A]n appellate court reviewing a motion to suppress must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Rockford, 213 N.J. 424, 440 (2013) (alteration in original) (quoting State v. Robinson, 200 N.J. 1, 15 (2009)). "Those findings warrant particular deference when they are 'substantially influenced by [the trial

judge's] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" Ibid. (alteration in original) (quoting Robinson, 200 N.J. at 15). "Thus, appellate courts should reverse only when the trial court's determination is 'so clearly mistaken "that the interests of justice demand intervention and correction."'" State v. Gamble, 218 N.J. 412, 425 (2014) (quoting State v. Elders, 192 N.J. 224, 244 (2007)).

Defendant's vehicle was lawfully stopped "based on a reasonable and articulable suspicion that an offense . . . has been or is being committed." State v. Amelio, 197 N.J. 207, 211 (2008) (quoting State v. Carty, 170 N.J. 632, 639-640, modified by 174 N.J. 351 (2002)). This includes "the facts known to the officers from personal observation," Alabama v. White, 496 U.S. 325, 330 (1990), and the information known to or communicated by police dispatch, State v. Crawley, 187 N.J. 440, 457 (2006).

The reasonable suspicion for an investigatory stop then blossomed into probable cause for a warrantless arrest. The police observed defendant driving recklessly during the ensuing pursuit as evidenced by the fact that defendant's vehicle was facing the wrong direction on Independence Way at the time of the stop. Defendant's vehicle matched the description of the vehicle involved in the road rage incident. It had been followed by the victim's friend.

10

"A warrantless search is presumed invalid unless it falls within one of the recognized exceptions to the warrant requirement."[1] State v. Gamble, 218 N.J. 412, 425 (2014) (quoting State v. Cooke, 163 N.J. 657, 664 (2000)). Evidence seized when found in plain view is one exception. Id. at 425-26 (citing State v. Mann, 203 N.J. 328, 340-41 (2010)). In order for the plain view exception to apply, the State must demonstrate:

> (1) the officer was "lawfully in the viewing area," (2) the officer discovered the evidence "inadvertently, meaning that he did not know in advance where the evidence was located nor intend beforehand to seize it," and (3) it was "immediately apparent" that the items "were evidence of a crime, contraband, or otherwise subject to seizure."
>
> [State v. Earls, 214 N.J. 564, 592 (2013) (quoting State v. Mann, 203 N.J. 328, 341 (2010)).]

Another recognized exception to the warrant requirement is the protective sweep, which permits a warrantless vehicle "search for weapons based on an

---

[1] Although Badawy briefly testified defendant consented to the search of the vehicle, the State did not sustain its burden to show consent. The State did not adduce testimony demonstrating defendant knowingly and voluntarily consented to the search. An executed consent to search was not admitted into evidence. The State does not argue on appeal that defendant consented to the search.

objectively-reasonable belief that an occupant of the vehicle is dangerous and may gain access to weapons." Gamble, 218 N.J. at 426 (quoting State v. Pierce, 136 N.J. 184, 205 (1994)). Under those circumstances, the "police may conduct a 'protective search of the passenger compartment' of a vehicle based on a reasonable belief 'that the vehicle contain[s] weapons potentially dangerous to the officers.'" Gamble, 218 N.J. at 427 (alteration in original) (quoting Michigan v. Long, 463 U.S. 1032, 1034-35 (1983)). See also State v. Lund, 119 N.J. 35, 48 (1990) (adopting the rule set forth in Long). A limited protective sweep is justified "when articulable facts are present that justify taking [such a] precaution" due to the "serious concern for officer safety." Gamble, 218 N.J. at 426 (quoting State v. Davila, 203 N.J. 97, 117 (2010)).

Here, the police were justified in conducting a limited protective sweep of the passenger compartment of the vehicle. The police had no reason to know if additional people were still inside the vehicle. Once defendant and Haley were removed from the vehicle, and it was clear the weapon defendant was suspected of firing at Oyetimbo was not on defendant or Haley's person, it was reasonable to conclude the weapon was still in the vehicle. Thus, it was also reasonable for the police to ensure there was no one else in the vehicle who could use the

weapon against them.  Therefore, it was lawful for the police to conduct a limited protective sweep of the passenger compartment of the vehicle.

Upon entry to conduct the protective sweep, the gun and magazine were immediately observed in plain view on the floorboard by the gas and brake pedals.  The police had not exceeded the scope of the permissible protective sweep at the time the gun and magazine were observed in plain view.

The remaining issue is whether the right to seize the gun and magazine was lost because the police waited until after the vehicle was impounded and taken to police headquarters to remove those items.  The seizure of the gun and magazine at police headquarters were authorized under the reasonable continuation doctrine.  See State v. O'Donnell, 408 N.J. Super. 177, 178-79 (App. Div. 2009) (holding evidence observed in plain view during warrantless entry can be lawfully seized during warrantless reentry as a "reasonable continuation of the initial entry to provide emergency aid").  The reentry of the vehicle at police headquarters to remove the gun and magazine previously observed in plain view was merely another "component[] of a single, continuous, and integrated police action" under the protective sweep and plain view exceptions to the warrant requirement.  State v. Henry, 133 N.J. 104, 116 (1993).

13

Having discovered the gun and magazine in plain view during a permissible limited protective sweep of the vehicle after defendant and Haley were arrested, the right to seize the weapons was not lost because the items were removed subsequently shortly after the vehicle was impounded.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3622-16T4