**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2272-21

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ANSUMANI KAMARA,
a/k/a JOHN MONTANEZ,

     Defendant-Appellant.

_____

Submitted March 18, 2024 – Decided April 12, 2024

Before Judges Mawla and Marczyk.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 13-03-0707.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Monique D. Moyse, Designated Counsel, on the briefs).

Bradley D. Billhimer, Ocean County Prosecutor, attorney for respondent (William Kyle Meighan, Supervising Assistant Prosecutor, of counsel and on the briefs).

PER CURIAM

Defendant Ansumani Kamara appeals from the trial court's August 19, 2021 order denying his petition for post-conviction relief ("PCR") following an evidentiary hearing. Defendant alleges his trial counsel was constitutionally ineffective because he failed to properly advise defendant regarding the immigration consequences of his guilty plea. We affirm.

I.

In March 2013, defendant was indicted and charged with: first-degree robbery, N.J.S.A. 2C:15-1(a)(2) (count one); first-degree accomplice liability, N.J.S.A. 2C:2-6(c)(1)(b) (count two); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1) (counts three and four); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (count five); and fourth-degree aggravated assault, N.J.S.A. 2C:12-1(b)(4) (counts six and seven).

In August 2014, defendant pled guilty to count one. Defendant admitted that in December 2012, he brandished a gun and robbed a business in Toms River. The State agreed to dismiss the remaining charges and recommended defendant be sentenced in the second-degree range with an eighty-five-percent period of parole ineligibility pursuant to the No Early Release Act ("NERA"), N.J.S.A. 2C:43-7.2. In October 2014, defendant was sentenced on count one to

seven years in custody subject to NERA. All remaining charges were dismissed. Defendant did not file a direct appeal.

In February 2017, defendant filed a PCR petition alleging his plea counsel never advised him regarding the risk of deportation associated with his plea and that he would not have pled guilty had he known he could face deportation. In February 2018, defendant's petition for PCR was denied without an evidentiary hearing. In December 2019, we reversed and remanded for a plenary hearing to determine "whether plea counsel had sufficient information to trigger an investigation into defendant's citizenship at the time of the guilty plea." State v. Kamara, No. A-5059-17 (App. Div. Dec. 16, 2019) (slip op. at 9).

In June 2021, the PCR judge commenced an evidentiary hearing. Defendant and his plea counsel, Ernest Ryberg, were the only witnesses that testified. Ryberg testified the Office of the Public Defender ("OPD") has "a very strict" policy on the representation of non-citizen clients, requiring them to complete a detailed non-citizen questionnaire regarding immigration issues. A blank copy of that questionnaire is placed into every new OPD file, regardless of a client's citizenship. The policy requires completed questionnaires to be submitted to the OPD for the purpose of generating a written memorandum to

A-2272-21

the assigned public defender to advise clients regarding the immigration consequences they are facing.

Ryberg testified he usually kept detailed notes—referred to as "pink sheets"—from meetings with clients. When Ryberg obtained defendant's file from the OPD for purposes of the evidentiary hearing, it did not contain his notes, pink sheets, or the non-citizen questionnaire. Ryberg expected the OPD would have preserved the entire file, including his notes.

He further testified he "was under the impression" defendant "was a naturalized citizen just like [him]."[1] Defendant had a social security number, prior convictions, and no detainer was lodged against him by Immigration and Customs Enforcement ("ICE"), as one would expect with a non-citizen. Ryberg believed he never filled out the mandatory OPD non-citizen questionnaire because when an "individual tells [him] that they are a citizen, [he] then put[s] the form away because it doesn't apply."

PCR counsel confronted Ryberg with two inmate look-up records from Essex County Jail and a uniform intake form ("5A form"). Portions of the inmate look-up records had no response after a section entitled "citizen."

---

[1] Plea counsel arrived in the United States as a child, obtained a "green card," and later became a naturalized citizen.

Similarly, the 5A form was blank after sections entitled "alien status" and "citizenship status," but stated defendant's place of birth was Liberia. Ryberg testified he "probably" reviewed those documents around the time he began representing defendant. He also conceded that a foreign place of birth should have raised a "red flag" regarding defendant's citizenship.

PCR counsel also questioned Ryberg concerning his "Defense Request for Investigation" form dated January 2, 2013. The request was authored by Ryberg and sent to an OPD investigator. It requested the investigator call defendant's brother to ascertain whether defendant had a green card, among other things. The OPD investigator prepared a report dated January 14, 2013, wherein it stated, "[defendant] came to the United States in June of 1999. [Defendant] does have a green card . . . . [Defendant] has been in the [United States] since he was in third or fourth grade. [Defendant] did graduate from High School."

Ryberg testified the report did not contradict his belief defendant was a naturalized citizen. The OPD file also contained a "Bail Motion Interview Questionnaire" with handwritten information about defendant. Although the form lists defendant's birthplace as Liberia, the section entitled "Immigration Status" lists the following possible responses: "Illegal/Green Card/Visa/Permanent/Citizen." None of those choices were circled. Instead,

A-2272-21

right next to it in the margin, "[fourteen] years [United States]" was handwritten and circled.

Ryberg testified he filed multiple bail motions and was partially successful in reducing bail. He agreed defendant's immigration status was an important factor in defending him but could not recall the issue of defendant's citizenship ever being raised during the bail motions. He asserted that he would not have pursued these motions if defendant was not a citizen because, in his view, courts routinely denied bail modifications for non-citizens.

In July 2013, Ryberg submitted another "Request for Investigation" to an OPD investigator stating, "Liberian-born client is uncertain of his immigration status and the impact of a felony conviction on same. Please check his immigration status using all available resources (i.e. is he documented, green card, citizen, etc . . .) Thanks." The OPD file did not contain a response to this request, and Ryberg testified he did not further pursue the issue because he relied on defendant's repeated representation that he was a citizen of the United States. He recalled defendant was "offended by the suggestion that he[ was] not a citizen," and became "defensive about it" when questioned. He testified defendant insisted he was a citizen and "not to worry about it."

6

In November 2013, Ryberg sent defendant a detailed letter addressing his forty-three-year sentencing exposure if convicted at trial. The letter noted defendant rejected the State's previous plea offer, refused to make a counteroffer, and "want[ed] a jury trial scheduled." In the letter, Ryberg strongly urged defendant to make a counteroffer after outlining the strengths of the State's case.

Ryberg was asked why there was no mention of immigration consequences in the letter. He testified it was not really a concern because he relied "on clients for [re]presentations about these things all the time. And [he] do[es not] investigate how to prove [his] client[s] lie[] about their background." He stated that at the time he wrote the letter, he had "no doubt" because defendant had "consistently [advised him] he's a citizen." He also testified he talked to an OPD investigator regarding the July 2013 investigation request. The investigator sought records from the federal government, but the government would not provide them.

Ryberg identified the plea form he completed with defendant in August 2014. He explained both he and defendant filled out the form together. Ryberg read each question to defendant, and then Ryberg wrote or circled the answers. Specifically, regarding question 17a—whether defendant was a United States

citizen—Ryberg testified he asked defendant whether he was a United States citizen, and when defendant said yes, Ryberg circled yes, and crossed out the other subsections for non-citizens. He also testified he "probably" referred defendant to an immigration attorney when he first interviewed him.

Ryberg also identified the September 2014 pre-sentence report ("PSR") prepared by a probation officer. The PSR showed defendant was a United States citizen, had a social security number and driver's license, went to high school in New Jersey, and had lived in Newark since 1999. Ryberg reviewed the PSR with defendant, and defendant told him everything was accurate.

Defendant testified he had come to the United States in 1999 with his mother, brother, and sister. He stated he was arrested in December 2012 in Newark and transferred to Ocean County Jail in connection with the Toms River robbery. He testified he was truthful when asked questions during booking and when he was interviewed for public defender representation. He claimed he never stated he was a United States citizen, but instead was a green card holder.

Defendant noted he was never presented with a non-citizenship form or questioned about his citizenship status. He admitted receiving Ryberg's November 2013 letter and understood his exposure if convicted at trial. He acknowledged he could read and write in English. After considering Ryberg's

advice, defendant decided to plead guilty. He explained Ryberg read and reviewed the entire plea form with him. However, he claimed that when Ryberg questioned him regarding question 17a—"Are you a citizen of the United States?"—he replied "no, I'm a green card holder." Defendant admitted Ryberg circled the answers to the plea form questions, and defendant initialed and signed the form, but he denied going over the answers with Ryberg to make sure they were correct. At the time of his plea, he testified he had no concerns about being deported.

Defendant recalled his interview for the PSR and asserted he answered the questions accurately. He specifically remembered the probation officer asking him if he was a citizen, to which he replied, "no. I am a permanent resident of the United States." After defendant was shown the PSR, he recalled that plea counsel reviewed it with him before sentencing.

Defendant alleged he was shocked when he learned of his possible deportation, sometime in 2013, after an immigration officer visited him in prison after sentencing. He testified he was released from state custody into ICE custody and deported in June 2019. On cross-examination, defendant conceded he received Ryberg's November 2013 letter regarding his exposure at trial and understood the risks. He testified he was "100 percent sure [he] would not have

9

pled guilty" and "would have continued [to] trial" if he knew he was going to be deported. He stated the risk of a longer sentence was better than "giving up and being sent back to a country [he knew] nothing about."

The PCR judge advised the parties about defendant's August 2013 plea in Hunterdon County and provided them the plea form, wherein defendant answered that he was not a United States citizen and that he understood a guilty plea may result in his removal from the United States. On August 11, 2021, the judge reopened the hearing, and defendant provided further testimony regarding the Hunterdon plea.

Defendant testified he was charged in Hunterdon County with receiving stolen property and other disorderly persons offenses. In August 2013, he discussed with his Hunterdon attorney a potential plea to the disorderly persons offense. He detailed how counsel reviewed the plea with him and admitted to initialing each page and signing the last page. He recalled advising his attorney he was not a citizen of the United States. He also recalled answering yes in response to question 17b, which states: "Do you understand that if you are not a citizen of the United States, this guilty plea may result in your removal from the United States and/or stop you from being able to legally enter or re-enter the United States?"

Defendant testified he understood his right to seek advice concerning the effect a guilty plea would have on his immigration status. He testified he did not seek this advice because his Hunterdon attorney had already discussed the matter with an immigration attorney and concluded that a disorderly persons offense would not result in immigration consequences because it was "not something serious." He asserted he "answered [his Hunterdon attorney] . . . the same way that [he] answered . . . Ryberg, . . . that [he was] not [a United States] citizen."

On cross-examination, the State confronted defendant with his sworn testimony before the Hunterdon Vicinage judge, and defendant admitted he signed, initialed, and "read and underst[ood] everything" in the plea form. He also testified he told the Hunterdon judge all his answers were truthful. Regarding his testimony that the Hunterdon charge was "not something serious," the State asked defendant whether he believed the first-degree robbery charge in this case was serious. Defendant initially answered "[n]o." Defendant ultimately stated he recognized robbery to be serious "[w]hen it comes to the superior courts" but not for immigration purposes.

On August 19, 2021, Judge Guy P. Ryan denied defendant's PCR petition in a comprehensive and well-reasoned written opinion. This appeal followed.

II.

Defendant raises the following point on appeal:

POINT ONE

[DEFENDANT] IS ENTITLED TO RELIEF ON HIS CLAIM THAT HIS ATTORNEY RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO ADVISE HIM ADEQUATELY ABOUT THE DEPORATION CONSEQUENCES OF HIS PLEA.

Defendant argues the judge correctly found that Ryberg failed to provide effective assistance of counsel, but erroneously ruled that he failed to establish the errors were prejudicial. Had he been advised of the deportation consequences, defendant asserts he would not have pled guilty to robbery and instead would have opted to proceed to trial, notwithstanding that he faced a significantly higher sentence if convicted.

We review a PCR court's conclusions of law de novo. State v. Nash, 212 N.J. 518, 540-41 (2013). Where, as here, the court has conducted an evidentiary hearing on a PCR petition, we defer to the "court's factual findings based on its review of live witness testimony," id. at 540, because of its "opportunity to hear and see the witnesses and to have the feel of the case, which a reviewing court cannot enjoy." State v. Nuñez-Valdéz, 200 N.J. 129, 141 (2009) (quoting State v. Elders, 192 N.J. 224, 244 (2007)). We must affirm the PCR court's factual

12

findings unless they are not supported by "sufficient credible evidence in the record" and "are so clearly mistaken that the interests of justice demand intervention and correction." Ibid. (quoting Elders, 192 N.J. at 244) (internal quotation marks omitted).

To reverse a conviction based on ineffective assistance of counsel, a defendant must demonstrate that: (1) "counsel's performance was deficient" and (2) counsel's "errors were so serious as to deprive the defendant of a fair trial." Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-part test in New Jersey). "With respect to both prongs of the Strickland test, a defendant asserting ineffective assistance of counsel on PCR bears the burden of proving his or her right to relief by a preponderance of the evidence." State v. Gaitan, 209 N.J. 339, 350 (2012).

Under the first prong, counsel's representation must be objectively unreasonable. State v. Pierre, 223 N.J. 560, 578 (2015). Under the second prong, as is relevant on this appeal, a defendant must "affirmatively prove" there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." State v. Gideon, 244 N.J. 538, 551 (2021) (quoting Strickland, 466 U.S. at 693-94). "A reasonable

13

probability is a probability sufficient to undermine confidence in the outcome."
Ibid. (quoting Strickland, 466 U.S. at 694). Proof of prejudice under
Strickland/Fritz's second prong "is an exacting standard." Ibid. (quoting State
v. Allegro, 193 N.J. 352, 367 (2008)).

In the specific context of showing prejudice after having entered a guilty
plea, a defendant must prove "that there is a reasonable probability that, but for
counsel's errors, [he] would not have pled guilty and would have insisted on
going to trial." Nuñez-Valdéz, 200 N.J. at 139 (quoting State v. DiFrisco, 137
N.J. 434, 457 (1994)). In other words, "a petitioner must convince the court that
a decision to reject the plea bargain would have been rational under the
circumstances." State v. O'Donnell, 435 N.J. Super. 351, 371 (App. Div. 2014)
(quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)).

Here, the judge found Ryberg "to be a credible and sincere witness"
because, given his unique status as a naturalized citizen, he was "particularly
vigilant to the immigration consequences facing his non-citizen clients." The
judge "categorically reject[ed] any claim plea counsel intentionally
misrepresented to the court defendant was a [United States] citizen after
defendant allegedly advised him [he] was a green card holder."

The judge also found defendant's testimony "unworthy of belief in material respects." He "reject[ed defendant's] claims to have not noticed both the Ocean plea form and the PSR recited he was a United States citizen." The judge stated:

> Defendant apparently expects the court to believe not one but two committed professionals, an Assistant Deputy Public Defender and a Senior Probation Officer, falsely and deliberately reported to the Superior Court that defendant was a [United States] citizen when they were expressly told he was not. The court rejects that contention as totally lacking in credibility.

The judge reached "the inescapable conclusion defendant was untruthful to both plea counsel and the probation officer regarding citizenship questions." He further concluded:

> [D]efendant fully recognized his non-citizen status and the likelihood of deportation before he entered a guilty plea in Ocean County, having discussed the issue with his attorney in Hunterdon. Having been thoroughly advised about immigration consequences in Hunterdon County and recognizing those consequences applied to "serious" charges, defendant deliberately concealed his non-citizenship to plea counsel and the PSR investigator in Ocean County on the erroneous hope immigration officials would not be alerted to his guilty plea to armed robbery.

The judge found Ryberg had sufficient information to initiate an investigation surrounding defendant's citizenship and in fact, did so. He found

15

it "inconceivable" Ryberg would have "arbitrarily dropped the issue without a satisfactory resolution." He concluded defendant "falsely advised plea counsel 'not to worry' about the issue," and that "plea counsel's testimony [was] completely credible in this regard." Nevertheless, because the OPD file did not appear to properly preserve Ryberg's notes, the judge determined defendant "just barely satisfied" the deficiency prong.

However, the judge found defendant failed to meet the prejudice prong under Strickland/Fritz because he failed to show that a decision to reject the plea would have been rational under the circumstances. Defendant faced a lengthy term of incarceration—a maximum mandatory period of parole ineligibility of twenty-six and one-half years. The judge also noted the significant strength of the State's case, and defendant's limited exposure under the plea was to a maximum sentence of eight years subject to NERA. He further found defendant not credible in his assertion "that he would have '100 [percent] gone to trial' as unworthy of belief" and a "post-hoc rationalization after defendant's attempt to 'game the system' failed." Therefore, defendant could not show prejudice by Ryberg's failure to conclude the immigration status investigation and that defendant's decision to reject a very favorable plea and risk spending his adult life in prison was not rational.

We reject defendant's challenge to Judge Ryan's prong two findings because they were supported by ample credible evidence in the record. Accordingly, we affirm substantially for the reasons set forth in his opinion. We add the following comments.

The judge found defendant failed to meet the prejudice prong because a decision to reject the plea would not have been rational under the circumstances as defendant was facing a maximum mandatory period of parole ineligibility of twenty-six and one-half years. The judge commented defendant "cavalierly discount[ed] the severity of the charges he was facing as well as the mountain of evidence the State had against him regarding the . . . robbery." The strength of the State's case (fingerprints at the robbery scene, video footage, positive eyewitness identification, a victim recording defendant's license plate as he left the scene), coupled with defendant's reduced exposure under the plea, support Judge Ryan's determination defendant was not credible in his assertion that he would have proceeded to trial.

The judge's conclusions that defendant was "unworthy of belief" and only advanced "a post-hoc rationalization after [his] attempt to 'game the system' failed" is supported by the record. While "even the smallest chance of success at trial may look attractive" from defendant's perspective, Lee v. United States,

582 U.S. 357, 358 (2017), defendant's assertion that he would have gone to trial had he known of immigration consequences was undermined by the fact that he already knew there might be immigration consequences based on his Hunterdon plea. Defendant also understood that robbery was a serious offense. Thus, even if Ryberg's representation was deficient, defendant failed to establish the requisite prejudice because he already knew he could be subject to deportation for a more serious crime.

Therefore, the judge did not err in finding defendant failed to satisfy the prejudice prong of Strickland/Fritz, and we discern no basis on which to disturb his findings. To the extent we have not addressed any remaining arguments, we have determined they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18